

# NUMBER 13-18-00474-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## IN RE OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## On Petition for Writ of Mandamus.

## MEMORANDUM OPINION

### Before Justices Contreras, Longoria, and Hinojosa
### Memorandum Opinion by Justice Contreras[1]

Through this original proceeding, the Office of the Attorney General of Texas (OAG) seeks to vacate an "Agreed Order to Reduce Past Child Support to Judgment" which eliminates a past due child support arrearage in the amount of $4,175.81.[2] We conclude that the agreed order is void because it was signed without notice and hearing to the OAG. Accordingly, we conditionally grant the petition for writ of mandamus.

---

[1] *See* TEX. R. APP. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not required to do so."); *id.* R. 47.4 (distinguishing opinions and memorandum opinions).

[2] This petition for writ of mandamus arises from trial court cause number 08-5687-D in the 105th District Court of Nueces County, Texas, and the respondent is the Honorable Jack W. Pulcher. *See* TEX. R. APP. P. 52.2.

## I. BACKGROUND

In 2010, the trial court entered an "Order in Suit to Modify Parent-Child Relationship" requiring Mark Smithson to pay child support to Sara Elizabeth Kotzur for their minor child, M.J.K., in the amount of $222.61 per month. Pursuant to the order, Smithson's child support payments were due to begin on July 1, 2010. The order required Smithson to make the child support payments through the Texas Child Support Disbursement Unit of the OAG; Kotzur had previously applied for child support services with the OAG in 2005. The trial court's order required both Smithson and Kotzur to provide medical support for their minor child.

On June 29, 2018, counsel for Smithson sent a letter to the trial court which "enclosed an Agreed Order to Reduce Past Child Support to Judgment" for the trial court's "review and approval." The letter stated that Smithson lived in New Jersey and had signed the agreed order, and Kotzur had appeared at counsel's office "to sign the order and receive[] monies for her agreement to enter this judgment." The OAG did not receive a copy of this letter, or the enclosed agreed order, and the trial court did not hold a hearing on the matter. On July 9, 2018, the trial court signed the agreed order which provides, in relevant part:

1.   [Smithson] and [Kotzur] have agreed that all past child support arrearage in the amount of $4,175.81 including medical support shall be reduced to zero effective on the date of this judgment, in consideration of the payment by [Smithson] to [Kotzur] of an agreed amount, the receipt and sufficiency of which is acknowledged by [Kotzur].

2.   By receipt of a copy of this agreement, the State Attorney General's office is ordered to correct the amount of child support arrearage to reflect a zero balance due as of the 11th of June, 2018.

3. The regular child support of $222.61 per month is to resume on the 1st day of July, 2018 as provided in the original decree. All other provisions of the previous decree are to remain in full force and effect except as modified herein.

On July 25, 2018, counsel for Smithson sent a certified copy of the signed order to the OAG by facsimile. On the facsimile cover sheet, counsel informed the OAG that the order approved a "reduction of child support to zero effective the 9th day of July 2018 based on an agreement of Sara Kotzur the Obligee and Mark Smithson, the Obligor in the case." Counsel requested the OAG to "[p]lease correct your records to reflect the agreement which was approved by the Court."

This original proceeding ensued. By five issues, the OAG contends: (1) the order reducing the child support arrearage to zero was void because it was not supported by pleadings; (2) the order was void because the OAG had not been served or otherwise given notice of the request for the trial court to sign it; (3) the trial court abused its discretion by signing the proposed order without a hearing; (4) the trial court lacked jurisdiction to order the OAG[3] to "correct the amount of child support arrearage to reflect a zero balance" as of June 11, 2018; and (5) mandamus relief is appropriate in this case.

This Court requested the real parties in interest, Smithson and Kotzur, to file a response to the petition for writ of mandamus. Smithson filed a response, but Kotzur did not. *See* TEX. R. APP. P. 52.2, 52.4. Smithson asserts, inter alia, that he has provided the trial court and the OAG with a "First Amended Agreed Order to Reduce Past Child

---

[3] This issue concerns section 22.002(c) of the Texas Government Code which delineates mandamus jurisdiction over officers of the executive departments of government. *See* TEX. GOV'T CODE ANN. § 22.002(c) (West, Westlaw through 2017 1st C.S.); *In Interest of C.D.E.*, 533 S.W.3d 367, 370 (Tex. App.—Houston [14th Dist.] 2015, no pet.). In this regard, the attorney general is an officer of an executive department of government. *See* TEX. CONST. art. IV, § 1; *In Interest of H.G.-J.*, 503 S.W.3d 679, 682 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

3

Support to Judgment," however, rather than agreeing to the order, the OAG instead filed this original proceeding. The first amended agreed order proposed by Smithson is substantially similar to the order signed by the trial court but differs in two substantive respects. First, Smithson's proposed order acknowledges that the past due child support arrearage of $4,175.81 excludes past due medical support. The proposed order states that the parties "agree that the amount of medical support not included herein is $1,175.34 as of June 11, 2018" and that amount "is still due and payable by [Smithson]." Second, the proposed order states that the OAG is "requested" to correct the amount of child support arrearage rather than "ordered" to do so.

## II. STANDARD OF REVIEW

To obtain relief by writ of mandamus, a relator must establish that an underlying order is void or a clear abuse of discretion and that no adequate appellate remedy exists. *In re Nationwide Ins. Co. of Am.*, 494 S.W.3d 708, 712 (Tex. 2016) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding). An abuse of discretion occurs when a trial court's ruling is arbitrary and unreasonable or is made without regard for guiding legal principles or supporting evidence. *In re Nationwide*, 494 S.W.3d at 712; *Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 578 (Tex. 2012). A trial court abuses its discretion when it fails to analyze or apply the law correctly or apply the law correctly to the facts. *In re Nationwide*, 494 S.W.3d at 712; *In re H.E.B. Grocery Co.*, 492 S.W.3d 300, 302 (Tex. 2016) (orig. proceeding) (per curiam).

We determine the adequacy of an appellate remedy by balancing the benefits of mandamus review against the detriments. *In re Essex Ins. Co.*, 450 S.W.3d 524, 528

4

(Tex. 2014) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136. In deciding whether the benefits of mandamus outweigh the detriments, we weigh the public and private interests involved, and we look to the facts in each case to determine the adequacy of an appeal. *In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 313 (Tex. 2010) (orig. proceeding); *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 469 (Tex. 2008) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136–37. Mandamus "may be essential to preserve important substantive and procedural rights from impairment or loss, [and] allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136.

With regard to the specific circumstances of this case, mandamus is appropriate if the trial court issues an order beyond its jurisdiction. *See In re Vaishangi, Inc.*, 442 S.W.3d 256, 261 (Tex. 2014) (orig. proceeding) (per curiam); *In re John G. & Marie Stella Kenedy Mem'l Found.*, 315 S.W.3d 519, 522 (Tex. 2010) (orig. proceeding). In such instances, mandamus is proper without a showing that the relator lacks an adequate remedy on appeal. *In re Sw. Bell Tel. Co.*, 35 S.W.3d 602, 605 (Tex. 2000) (orig. proceeding) (per curiam); *In re Dickason*, 987 S.W.2d 570, 571 (Tex. 1998) (orig. proceeding).

### III. DELAY

As a threshold matter, Smithson contends that the OAG waived its complaints regarding notice and hearing due to its delay in seeking mandamus relief. Smithson contends that the OAG did not pursue mandamus relief regarding a similar agreed order pertaining to child support arrearages that was signed by the trial court in 2013.

Mandamus is an extraordinary and discretionary remedy that is not issued as a matter of right. *In re Dorn*, 471 S.W.3d 823, 824 (Tex. 2015) (orig. proceeding); *Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex. 1993); *Callahan v. Giles*, 155 S.W.2d 793, 795 (Tex. 1941). Thus, delaying the filing of a petition for writ of mandamus may waive the right to relief unless the relator can justify the delay. *In re Int'l Profit Assocs.*, 274 S.W.3d 672, 676 (Tex. 2009) (orig. proceeding) (per curiam). Even though mandamus is not an equitable remedy, equitable principles govern its issuance. *In re Dorn*, 471 S.W.3d at 824; *Rivercenter*, 858 S.W.2d at 367. One such principle is that "'[e]quity aids the diligent and not those who slumber on their rights.'" *Rivercenter*, 858 S.W.2d at 367 (quoting *Callahan*, 155 S.W.2d at 795).

The OAG is not attacking the merits of the 2013 order in this case and is instead assailing the July 9, 2018 agreed order signed by the trial court. The record shows that the OAG received notice that the agreed order had been signed on July 25, 2018 and this original proceeding ensued approximately one month later. Smithson does not argue that this one-month period of alleged delay is unreasonable. Under these circumstances, we conclude that the OAG did not unreasonably delay filing its petition for writ of mandamus. *See In re Int'l Profit Assocs.*, 274 S.W.3d at 676; *Rivercenter*, 858 S.W.2d at 367. Accordingly, we address the merits of this original proceeding.[4]

---

[4] Smithson also asserts that the OAG's petition for writ of mandamus must be verified and supports this contention with citation to *Cantrell v. Carlson*, 313 S.W.2d 624, 626 (Tex. Civ. App.—Dallas 1958, orig. proceeding). However, Texas Rule of Appellate Procedure 52.3(j), which became effective on September 1, 2008, provides that an original proceeding must contain a certification: "The person filing the petition must certify that he or she has reviewed the petition and concluded that every factual statement in the petition is supported by competent evidence included in the appendix or record." TEX. R. APP. P. 52.3(j). Unlike the prior version of Rule 52.3, the factual statements contained in a petition for writ of mandamus no longer must be verified by affidavit made on personal knowledge by an affiant competent to testify to the matters stated. *See id.*; *In re Butler*, 270 S.W.3d 757, 758 (Tex. App.—Dallas 2008, orig. proceeding). Here, the OAG complied with the current requirement of Rule 52.3(j) by certifying that its counsel has reviewed the petition and has concluded that "every factual statement contained in the petition is supported

Here, the trial court's agreed order eliminated $4,175.81 in past due child support "in consideration of the payment by [Smithson] to [Kotzur] of an agreed amount, the receipt and sufficiency of which is acknowledged by [Kotzur]." The order further required the OAG to "correct the amount of child support arrearage." The OAG attacks the agreed order by five issues. We address these issues out of turn.

In its second and third issues, the OAG asserts that the trial court's order was void because it had not been served with Smithson's request to enter an agreed order, given notice of Smithson's request for execution of the order, or provided with an opportunity for hearing on the subject matter of the order. In contrast, Smithson asserts that it was not necessary to provide the OAG with notice or a hearing regarding entry of the agreed judgment. In support of this proposition, Smithson asserts, in sum, that (1) the OAG lacked an assignment or other interest in the child support arrearages, and (2) the OAG waived its rights to assert any interest in the past due child support.

A trial court's failure to comply with the notice requirements in a contested case deprives a party of the constitutional right to be present at the hearing and to voice its objections in an appropriate manner, which results in a violation of fundamental due process. *See In re K.M.L.*, 443 S.W.3d 101, 119 (Tex. 2014). Failure to give proper

by competent evidence included in the appendix or record." *See* TEX. R. APP. P. 52.3(j); *In re Butler*, 270 S.W.3d at 758.

In connection with this argument, Smithson also asserts that "there are disputed facts and legal issues . . . which if taken into consideration may result in a denial of the writ of mandamus." Appellate courts may not deal with disputed areas of fact in a mandamus proceeding. *In re Pirelli Tire, L.L.C.*, 247 S.W.3d 670, 676 (Tex. 2007) (orig. proceeding); *In re Angelini*, 186 S.W.3d 558, 560 (Tex. 2006) (orig. proceeding). However, the response to the petition for writ of mandamus fails to identify any disputed facts which would bar mandamus relief. Accordingly, we conclude that this doctrine does not bar our review of this proceeding.

7

notice "violates 'the most rudimentary demands of due process of law.'" *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84 (1988) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 550 (1965)). Due process requires that parties receive notice "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections." *Peralta*, 485 U.S. at 84 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)); *see Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983). Stated otherwise, due process requires notice "at a meaningful time and in a meaningful manner" that would enable a party to be bound by a court's judgment to have an opportunity to be heard. *Peralta*, 485 U.S. at 86; *accord Univ. of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 930 (Tex. 1995). "[A] judgment entered without notice or service is constitutionally infirm." *Peralta*, 485 U.S. at 84; *see In re Guardianship of Jordan*, 348 S.W.3d 401, 405 (Tex. App.—Beaumont 2011, no pet.) ("The constitutional right to due process of law restricts the ability of a court to render a judgment binding a party without proper notice."). If improper notice is given to a party when notice is required, any subsequent court proceedings with respect to the party who was not given notice are void. *Lytle v. Cunningham*, 261 S.W.3d 837, 840 (Tex. App.—Dallas 2008, no pet.); *Gutierrez v. Lone Star Nat'l Bank*, 960 S.W.2d 211, 214 (Tex. App.—Corpus Christi 1997, pet. denied). "In sum, a judgment is void if the defects in service are so substantial that the defendant was not afforded due process." *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 275 (Tex. 2012).

We begin our evaluation of the OAG's claims in this case with reference to the statutory scheme regarding child support. The Texas Family Code authorizes the OAG, the state's designated Title IV–D agency, to enforce, collect, and distribute child support.

*Office of the Attorney Gen. of Tex. v. Scholer*, 403 S.W.3d 859, 862 (Tex. 2013); *see* TEX. FAM. CODE ANN. §§ 231.001, 231.101(a)(5)-(6) (West, Westlaw through 2017 1st C.S.). When the OAG provides Title IV–D services, it becomes entitled to an assignment of child support rights. *See* TEX. FAM. CODE ANN. § 231.104; *Scholer*, 403 S.W.3d at 862 (discussing the limited power of assignment provided to the OAG based on applications for financial assistance or child support services). Likewise, any child support arrearage belongs to the OAG because of the assignment. *See In re A.B.,* 267 S.W.3d 564, 565 (Tex. App.—Dallas 2008, no pet.); *In re M.E.G.,* 48 S.W.3d 204, 208 (Tex. App.—Corpus Christi 2000, no pet.); *see also In re C.A.C.*, No. 13-10-00332-CV, 2011 WL 3631958, at *1 (Tex. App.—Corpus Christi Aug. 18, 2011, orig. proceeding) (mem. op.).

Here, Smithson asserts that the OAG did not possess an assignment or other interest in the child support arrearage, or alternatively, possessed only a limited assignment which had expired. In support of this argument, Smithson asserts that Kotzur's 2005 request for child support services from the OAG did not engender a "permanent" interest on the part of the OAG in the child support arrearages. Smithson states that the 2013 agreed order "operated as an acknowledgment by interested parties that [the] assignment of child support proceeds had occurred," and concedes that the 2013 order "did have that legal effect," but asserts that the assignment "was limited only to the amount of set off if any, [representing the amount for which] the State provided medical services to the child." Smithson further asserts that the OAG's 2017 nonsuit of a previous child support action filed in 2015 operated as a waiver of any assignment of the arrearages.

9

Pursuant to the statutory scheme and cases construing the family code, the OAG provided child support services to Kotzur and thereby possessed an assignment in the child support arrearage, and that child support arrearage belonged to the OAG by the assignment. *See* TEX. FAM. CODE ANN. § 231.104; *In re A.B.,* 267 S.W.3d at 565; *In re M.E.G.,* 48 S.W.3d at 208. The record before the Court contains Kotzur's 2005 request for child support services and the pleadings reflect the OAG's continued participation in the child support process in 2013, 2015, 2017, and 2018. The record provided by the parties contains no order or judgment dismissing the OAG from the case and the trial court's "Register of Actions" denotes that the OAG is a party to the case. Further, Smithson's proposed amended order belies his contention that the OAG lacked any interest in the arrearage. As stated previously, the agreed order at issue in this original proceeding reduces the past due child support arrearage of $4,175.81 "including medical support" to zero. In his response to the petition for writ of mandamus, Smithson asserts that the amount of medical support that was due "was not known at the time the order was signed but communications with [the OAG] before the petition for mandamus was filed revealed that the medical support due was $1,175.34 as June 11, 2018." Smithson asserts that he "offered to pay the medical support due and the [OAG] is holding more than enough of his monies to pay this amount but [it] refuses to apply the amount to his medical arrearage."

Smithson provides no authority in support of his overall contention that the OAG's assignment of the child support arrearages had expired or was otherwise limited to the amounts paid by the State on behalf of the child in the circumstances present in this case.

Based on the record provided and the applicable law, we reject Smithson's assertion that the OAG lacked an assignment or interest in the past due child support arrearages.

Smithson further asserts that the OAG waived any right to notice and hearing regarding entry of the agreed order through inaction. According to Smithson, "the only time that the [OAG] took any action related to child support was started on 10/01/2015 and that action was nonsuited in 6/28/17 by the [OAG]." Smithson contends, inter alia, that the parties "reached independent agreements" in 2013 and 2018 to reduce Smithson's child support and medical support arrearages to zero because of the "lack of adequate services" provided by the OAG. According to Smithson, the OAG "did not participate in the agreements." Smithson further contends that the parties had resolved issues pertaining to child support by "informal process" in 2013 without the OAG's participation, and a similar process should therefore be allowed in this case.

We agree with Smithson that the due process right to notice prior to judgment is subject to waiver. *See In re K.M.L.*, 443 S.W.3d at 119. However, any "such waiver must be voluntary, knowing, and intelligent[]." *Id.*; *see D.H. Overmyer Co. Inc., of Ohio v. Frick Co.*, 405 U.S. 174, 185 (1972); *see also In Interest of L.G.T.*, No. 05-17-00140-CV, 2017 WL 2729958, at *5 (Tex. App.—Dallas June 26, 2017, no pet.) (mem. op.). Smithson does not cite any authorities in support of his contention that the OAG's actions in this case constituted waiver of its right to participate in the trial court proceedings. Based on the record before us, we cannot conclude that the OAG voluntarily, knowingly, and intelligently waived its due process right to notice of and hearing on the agreed judgment in 2018 through any of the actions cited by Smithson, including the OAG's apparent acquiescence in the 2013 agreed judgment signed five years earlier. *See In re K.M.L.*,

11

443 S.W.3d at 119–20 (stating that due process rights are violated when a judgment is entered without the party having received notice of the setting of the case even when that party previously waived notice of citation); *see also Delgado v. Hernandez*, 951 S.W.2d 97, 99 (Tex. App.—Corpus Christi 1997, no writ).

Here, it is undisputed that the OAG did not receive notice of Smithson's request to enter an agreed order regarding the child support arrearages.[5] The OAG did not receive a copy of Smithson's request for entry of an order, or a copy of the agreed order, or receive a hearing regarding the substance of the order. The failure to give proper notice and service of Smithson's request to enter the agreed judgment resulted in a violation of due process and rendered the agreed judgment "constitutionally infirm." *See Peralta*, 485 U.S. at 84; *In re Guardianship of Jordan*, 348 S.W.3d at 405. We conclude that the trial court abused its discretion by signing the agreed order without providing the OAG with notice and hearing, and accordingly, the agreed order is void. *See id*.; *Garcia v. Harding*,

---

[5] We note that Smithson contends that an obligor and obligee can enter independent agreements regarding child support arrearage. However, the Texas Supreme Court has held that the trial court cannot enforce private agreements between obligors and obligees to reduce or eliminate child support obligations or rely on such agreements to reduce the arrearages. *See Ochsner v. Ochsner*, 517 S.W.3d 717, 723–24 (Tex. 2016); *Williams v. Patton*, 821 S.W.2d 141 (Tex. 1991). The rationale for this holding is as follows:

> The Legislature requires courts to consider whether the proposed parental agreements serve the child's best interests—a recognition of the key tenet that child support is a duty owed by a parent to a child, not a debt owed to the other parent.
>
> Our decision in *Williams* was guided by the acknowledgment that the obligee parent may suffer significant financial hardship following divorce and thus might be tempted to accept, for example, an offer of a lump-sum payment instead of the court-ordered regimen of payments even though over time the court-ordered scheme would provide more money towards the child's upbringing. Our concern was the risk of private downward modification of child-support payments, either unilaterally or by "agreement," to shirk parental duty.

*Ochsner*, 517 S.W.3d at 724 (footnotes omitted) (discussing *Williams*, 821 S.W.2d at 144–45). "Requiring that the trial court reduce arrearages to a final judgment before such agreements can be entered into protects the interests of the child by encouraging the payment of child support and protects the interests of the custodial parent by equalizing the bargaining positions of the parties." *Williams*, 821 S.W.2d at 146.

12

545 S.W.3d 8, 13–14 (Tex. App.—El Paso 2017, no pet.) (collecting cases regarding entry of judgments without notice). We sustain the OAG's second and third issues.

In its fifth issue, the OAG contends that mandamus relief is appropriate. The order is void, and mandamus is a proper remedy without a showing that the OAG lacks an adequate remedy by appeal. *See In re Vaishangi, Inc.*, 442 S.W.3d at 261; *In re John G. & Marie Stella Kenedy Mem'l Found.*, 315 S.W.3d at 522; *In re Sw. Bell Tel. Co.*, 35 S.W.3d at 605. We sustain the OAG's fifth issue.

Having sustained the OAG's second, third, and fifth issues, we need not address its remaining issues. *See* Tex. R. App. P. 47.4. Our disposition of this matter should not be interpreted to preclude the trial court from exercising its discretion to find and confirm the amount of Smithson's child support arrearage. *See* Tex. Fam. Code Ann. §§ 157.319(a), 157.321, 157.322, 157.323 (West, Westlaw through 2017 1st C.S.); *Ochsner v. Ochsner*, 517 S.W.3d 717, 720 (Tex. 2016). The trial court may determine the amount of Smithson's arrearage based on an evidentiary review taking into consideration any statutorily authorized defenses that are raised and supported by evidence. *See id.* § 157.323(c); *Scholer*, 403 S.W.3d at 865 (noting that "a court may not adjust arrearage amounts outside of the statutorily mandated exceptions, offsets, and counterclaims"); *see also Chenault v. Banks*, 296 S.W.3d 186, 190 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (stating that "the trial court's child support calculations must be based on the payment evidence presented").

## V. Conclusion

The Court, having examined and fully considered the petition for writ of mandamus, the response, the record, and the applicable law, concludes that the OAG has met its

burden to obtain relief. Accordingly, we lift the stay previously imposed in this case. *See* Tex. R. App. P. 52.10(b) ("Unless vacated or modified, an order granting temporary relief is effective until the case is finally decided."). We conditionally grant mandamus relief directing the trial court to vacate the agreed order signed on July 9, 2018. Our writ will issue only if the trial court fails to act in accordance with this opinion.

DORI CONTRERAS
Justice

Delivered and filed the
23rd day of October, 2018.